## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MACK N BRINSON, | Civil Action No.  22-5389 (MCA) |
| **Plaintiff,** | |
| v. | **MEMORANDUM & ORDER** |
| OSCAR AVILES et al., | |
| **Defendants.** | |

Plaintiff Mack N. Brinson ("Plaintiff"), a pretrial detainee at Hudson County Correctional Center ("HCCC") seeks to bring this civil action *in forma pauperis*, without prepayment of fees or security, asserting claims pursuant to 42 U.S.C. § 1983.  At this time, the Court grants the IFP application.  *See* 28 U.S.C. § 1915.  Federal law requires this Court to screen Plaintiff's Complaint for *sua sponte* dismissal prior to service, and to dismiss any claim if that claim fails to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6) and/or to dismiss any defendant who is immune from suit.  *See* 28 U.S.C. § 1915(e)(2)(B); *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).

Plaintiff has sued Oscar Aviles, Director of HCCC, and Michael Dantico, who is allegedly the head of the medical department at HCCC.  He alleges that Aviles "failed to establish a COVID-19 protocol policy during this increased pandemic here at HCCC.[,] which is causing cruel and unsanitary conditions alike that creates health and life thr[e]ats."  ECF No. 1, Complaint at 4.  He makes the same general allegations against Dantico.  *See id.*

In the fact section of his Complaint, Plaintiff alleges that on July 29, 2022, several inmates arrived at HCCC from Essex County Correctional Facility and were placed on E-5-N, which is a dormitory.  Of the seven inmates who arrived, one tested positive for COVID-19, and that positive

inmate created "a snowball effect with numerous inmates testing positive daily since the one positive result!" *Id.* at 5. As a result of "irresponsible staff" and the COVID-19 outbreak, inmates have been denied "court trips" and are subjected to COVID-19 testing every seven days. *Id.* There are 42 inmates in the dormitory who have been exposed to COVID-19, and correctional officers allegedly do not enforce the mask requirement. *Id.* Plaintiff's court date was postponed twice (from May 29, 2022 to June 24, 2022, and again to July 29, 2022) due to "COVID protocol[,]" and no one knows when the quarantine will end. *Id.* Plaintiff alleges that the COVID-19 outbreak and the resulting quarantine are an "emotional rollercoaster" and have created tension among inmates and staff. *Id.* Plaintiff also alleges that HCCC is accepting inmates from Cumberland, Essex, Union, and Middlesex Counties. No one "they" spoke to was tested on arrival to the jail, and HCCC continues to accept inmates, and positive tests are increasing rapidly. *Id.* Plaintiff asks for damages for physical and emotional injuries and describes HCCC as a "death trap[.]" *Id.*

The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as the standard for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To survive screening, Plaintiff's Complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quotations omitted). Conclusory allegations do not suffice. *See id.* Because Plaintiff is proceeding pro se, the Court construes his allegations liberally. *See Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

The Court construes Plaintiff to raise his claims for relief pursuant to 42 U.S.C. § 1983.[1] "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Plaintiff has sued Oscar Aviles, the Director at HCCC and Michael Dantico, who is allegedly the head of the medical department at HCCC. The Court construes Plaintiff to raise his claims against Aviles and Dantico in their personal capacities for damages and in their official capacities to the extent he seeks injunctive relief. The Court liberally construes Plaintiff to allege that his conditions of confinement amount to punishment and that Aviles and Dantico violated Plaintiff's constitutional rights by failing to create protocols to stop the spread of COVID-19 at HCCC. Since Plaintiff is a pretrial detainee, the Fourteenth Amendment governs his claim regarding his conditions of confinement at Hudson County Jail. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).

There are two basic ways that supervisors, like Aviles and Dantico, may be held liable under § 1983 – through direct participation or through policymaking. With respect to direct participation, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center*, 372 F.3d 572, 586 (3d Cir. 2004); *see also Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."). A supervisor-defendant may be also liable for unconstitutional acts undertaken by subordinates if the supervisor-

---

[1] The Court does not construe Plaintiff to raise any state law claims.

defendant "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (alteration in original). Policy claims have specific pleading requirements. "[T]o hold a supervisor liable...for their deficient policies...the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of [a constitutional] injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133–34 (3d Cir. 2001) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)); *see also Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 317 (3d Cir. 2014), rev'd on other grounds by *Taylor v. Barkes*, 135 S. Ct. 2042, 2043 (2015) (citing *Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989)).

In addition to pleading personal involvement, a Plaintiff must also plead sufficient facts showing that his conditions of confinement violate the Constitution.  In accordance with the Supreme Court's decision in *Bell v. Wolfish*, 441 U.S. 520, 549 (1979), detainees may not be punished before they are adjudicated guilty. *Hubbard v. Taylor* 538 F.3d 229, 231 (3d Cir. 2008) (*Hubbard II*).  The touchstone for the constitutionality of detention is whether conditions of confinement are meant to punish or are "but an incident of some other legitimate governmental purpose." *Hubbard II*, 538 F.3d at 232 (quoting *Bell*, 441 U.S. at 538). "[T]he ultimate question" is whether conditions are "reasonably related to a legitimate governmental objective." *Id.* at 236 (quoting *Bell*, 441 U.S. at 549).  The Third Circuit instructs courts to consider the totality of the circumstances of confinement, including any genuine privations or hardships over an extended period of time, and whether conditions are (1) rationally related to their legitimate purpose or (2) excessive in relation to that purpose. *Hope v. Warden York County Prison*, 972 F.3d 310, 326 (3d.

4

Cir. 2020) (citation omitted); *see also Union Cnty. Jail Inmates v. DiBuono*, 713 F.2d 984, 995–96 (3d Cir. 1983) (though double-bunking involved cramped, crowded cells for sleeping, it was not punishment because it eliminated floor mattresses and permitted more recreational space).

In assessing whether conditions and restrictions are excessive given their purposes, the courts must acknowledge that practical considerations of detention justify limitations on "many privileges and rights." *Bell*, 441 U.S. at 545–46. Though not a convicted prisoner, a pretrial detainee "simply does not possess the full range of freedoms of an unincarcerated individual." *Id.* at 546; *see also Hope*, 972 F.3d at 326.

As the Supreme Court cautioned in *Bell v. Wolfish*:

> In determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion, courts must heed our warning that such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.

441 U.S. at 540 n. 23 (citations omitted); *see also Block v. Rutherford*, 468 U.S. 576, 584 (1984) (noting the "very limited role that courts should play in the administration of detention facilities"). Furthermore, in *Hope v. Warden York County Prison*, which involved habeas claims brought by immigration detainees confined at the beginning of the COVID-19 pandemic, the Third Circuit warned against making "ideal" conditions, such as the ability to socially distance, a "sine qua non of constitutional detention." *Id.* at 327. The Third Circuit reiterated that the "touchstone for the constitutionality of detention is whether conditions of confinement are meant to punish or are 'but an incident of some other legitimate governmental purpose.'" *Id.* at 326 (quoting *Hubbard II*, 538 F.3d at 232).

Here, Plaintiff alleges that he and other inmates were quarantined due to an outbreak of COVID-19 in his dormitory at HCCC and that the outbreak and resulting quarantine created tension among inmates and staff and caused his criminal court dates to be postponed.  Petitioner does not state a claim that the conditions of his confinement during this quarantine period amounts to punishment.  The government has a legitimate government purpose in quarantining inmates exposed to COVID-19 to prevent further spread of the virus.  Plaintiff also has not provided sufficient facts to suggest that he endured any genuine hardships during the quarantine period from which the Court could conclude that it was designed to punish him or was excessive in relation to its purpose.   The Court, therefore, dismisses without prejudice Plaintiff's conditions of confinement claims at screening for failure to state a claim for relief.

Plaintiff may be attempting to allege that Aviles and Dantico created deficient policies to prevent the spread of COVID-19 at HCCC and were deliberately indifferent to the serious risk of constitutional injury resulting from those deficient policies.  *See Beers-Capitol v. Whetzel*, 256 F.3d at 133–34; *see also Helling v. McKinney*, 509 U.S. 25, 34–35 (1993) (recognizing claim of deliberate indifference of officials to exposure to tobacco smoke that poses unreasonable health risk); *see also Hope*, 972 F.3d at 329 (recognizing that immigration detainees could assert claims of deliberate indifference based on their vulnerabilities to COVID-19 due to their ages or medical conditions); *Palakovic v. Wetzel*, 854 F.3d 209, 224 (3d Cir. 2017) (discussing particular vulnerability to suicide due to mental health conditions); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582–83 (3d Cir 2003) (finding that medical professional's denial of insulin to insulin-dependent diabetic could amount to deliberate indifference).

In order to state a claim that Aviles and/or Dantico created deficiencies policies or protocols to prevent the spread of COVID-19, Plaintiff would need to provide facts showing that there were

6

specific policies or practices that Aviles and/or Dantico failed to employ, that the specific policies or protocols that were in place created an unreasonable risk of injury to Plaintiff or inmates in general, and that Aviles and/or Dantico were on notice that the existing policies or protocols would result in such injuries, but failed to act. *Beers-Capitol*, 256 F.3d at 133–34. Here, Plaintiff does not plead these elements, and thus fails to state a policy claim against Aviles and/or Dantico.

Moreover, to establish deliberate indifference, Plaintiff must show the particular defendant knew of and disregarded an excessive risk to his health and safety. *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). And although a detainee's particular medical vulnerability coupled with detention conditions can create a substantial risk of harm, *see Palakovic*, 854 F.3d at 226, deliberate indifference requires significantly more than negligence. *County of Sacramento v. Lewis*, 523 U.S. 833, 849–50 (1998). Moreover, "mere disagreement" as to the response to the risk to a plaintiff in light of their medical condition will not support constitutional infringement. *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987).

Plaintiff's passing allegations about the grave danger presented by COVID-19 may have been accurate in 2020, at the beginning of the COVID-19 pandemic. Over time, the danger COVID-19 presents to the average person has diminished due many factors, including vaccination, prior infection, and improved treatments for the virus. And although the Third Circuit has recognized that immigration detainees could assert claims of deliberate indifference based on their vulnerabilities to COVID-19 due to their ages or medical conditions, *see Hope*, 972 F.3d at 329, Plaintiff fails to provide sufficient facts to suggest that he faced a substantial risk of harm from COVID-19 in July 2022 (due to his age, health conditions, or other factors). As such, even if Plaintiff could show that the COVID-19 protocols are deficient, he fails to show that he faced a

serious risk of harm due to those deficient policies.  As such, the deliberate indifference claims against Defendants Aviles and Dantico as policymakers are likewise dismissed without prejudice.

For the reasons explained in this Memorandum and Order, the Complaint is dismissed without prejudice in its entirety as to Oscar Aviles and Michael Dantico.  The Court will permit Plaintiff to submit an Amended Complaint within 45 days to the extent he can provide facts to cure the deficiencies in his claims against these Defendants.  *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007) (holding that in civil rights cases, the Court must allow amendment, unless doing so would be inequitable or futile).

**IT IS, THEREFORE**, on this ____7____ day of June 2023,

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 (ECF Nos. 1-1) is hereby GRANTED; and it is further

**ORDERED** that the Complaint (ECF No. 1) shall be filed; and it is further

**ORDERED** that, pursuant to 28 U.S.C. § 1915(b) and for purposes of account deduction only, the Clerk shall serve a copy of this Order by regular mail upon the Attorney General of the State of New Jersey and the Administrator of Hudson County Correctional Center; and it is further

**ORDERED** that Plaintiff is assessed a filing fee of $350.00 and shall pay the entire filing fee in the manner set forth in this Order pursuant to 28 U.S.C. § 1915(b)(1) and (2), regardless of the outcome of the litigation, meaning that if the Court dismisses the case as a result of its *sua sponte* screening, or Plaintiff's case is otherwise administratively terminated or closed, § 1915 does not suspend installment payments of the filing fee or permit refund to the prisoner of the filing fee, or any part of it, that has already been paid; and it is further

**ORDERED** that pursuant to *Bruce v. Samuels*, 136 S. Ct. 627, 632 (2016), if Plaintiff owes fees for more than one court case, whether to a district or appellate court, under the Prison

Litigation Reform Act (PLRA) provision governing the mandatory recoupment of filing fees, Plaintiff's monthly income is subject to a simultaneous, cumulative 20% deduction for each case a court has mandated a deduction under the PLRA; i.e., Plaintiff would be subject to a 40% deduction if there are two such cases, a 60% deduction if there are three such cases, etc., until all fees have been paid in full; and it is further

**ORDERED** that pursuant to 28 U.S.C. § 1915(b)(2), in each month that the amount in Plaintiff's account exceeds $10.00, the agency having custody of Plaintiff shall assess, deduct from Plaintiff's account, and forward to the Clerk of the Court payment equal to 20% of the preceding month's income credited to Plaintiff's account, in accordance with *Bruce*, until the $350.00 filing fee is paid. Each payment shall reference the civil docket numbers of the actions to which the payment should be credited; and it is further

**ORDERED** that the Complaint is dismissed WITHOUT PREJUDICE in its entirety for failure to state a claim for relief pursuant to the Court's screening authority under § 1915(e)(2)(B); and it is further

**ORDERED** that Plaintiff may submit an Amended Complaint and a request to reopen this matter within 45 days to the extent he can cure the deficiencies in his claims for relief; and it is further

**ORDERED** that if Plaintiff does not seek to submit an Amended Complaint within the timeframe provided, this dismissal will automatically convert to a dismissal with prejudice; and it is further

**ORDERED** that the Clerk of the Court shall send a copy of this Order to Plaintiff by regular U.S. mail and CLOSE this matter accordingly.

Madeline Cox Arleo
United States District Judge